IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANTEC CONSULTING SERVICES INC., | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| V. | : | |
| | : | |
| MEHMET ARSLAN, GEORGE H. WILLIAMS, JR., | : | |
| BENJAMIN RENSHAW AND | : | |
| SARGENT & LUNDY, LLC | : | |
| Defendant(s) | : | |

## COMPLAINT
## FOR INJUNCTIVE AND OTHER RELIEF AND DAMAGES

Plaintiff Stantec Consulting Services Inc. ("Stantec") by and through its undersigned

counsel, hereby files the following Complaint for Injunctive and Other Relief, and Damages

against Defendants Mehmet Arslan ("Arslan"), George H. Williams, Jr. ("Williams"), Benjamin

Renshaw ("Renshaw")(collectively "Individual Defendants") and Sargent & Lundy, LLC

("S&L"), (collectively, with Individual Defendants, "Defendants") for their actual, threatened, and

imminent: (i) unfair competition; (ii) tortious interference with business and/or contractual

relationships; (iii) breach of fiduciary duty/duty of loyalty; (iv) breach of contract; (v) civil

conspiracy; and (vi) misappropriation/conversion of trade secrets and confidential business

information. In support thereof, Stantec avers as follows:

### PRELIMINARY STATEMENT

1.    Arslan, a senior leader and Vice President and Sector Leader for Power Delivery in

North America of Stantec's Power & Dams Business Line, orchestrated and implemented a plan

with a direct competitor – S&L – to leave Stantec for S&L and to raid key members of Stantec's

team as well as solicit clients of Stantec for S&L. Arslan's actions have been authorized by S&L

because S&L stands to gain significant intellectual and technical resources and a stronger foothold

in the Power Industry. Arslan's immediate, aggressive and continuing recruitment of Stantec employees and clients represents an overt breach of contract, an overt breach of trust, as well as a breach of the fiduciary duty of loyalty that he owed to Stantec. Further, the theft of Stantec's confidential and proprietary business information by Individual Defendants in anticipation of their departure and in furtherance of their scheme to solicit Stantec employees and clients has caused Stantec to suffer, and it will continue to suffer, immediate and irreparable harm.. The potential consequences to Stantec are significant with a reduction in its technical expertise due to the loss of employees, an unfair disadvantage by the theft of Stantec confidential and proprietary information and trade secrets, and a reduction in its business, with other cascading negative effects that are difficult to measure.

## THE PARTIES

2.     Stantec Consulting Services Inc. ("Stantec") provides professional consulting services in planning, engineering, architecture, landscape architecture, surveying, environmental sciences, project management, and project economics for infrastructure and facilities projects. Stantec's Power and Dams Business Line (the business line that Individual Defendants were engaged in for Stantec) works throughout the thermal generation, transmission & distribution, renewable energy, dams/hydropower, and telecommunications markets to provide customized solutions to clients everywhere. The Power and Dams Business Line provides engineering services primarily to North American based clients but has projects around the globe. The business is active throughout the project lifecycle, beginning with feasibility studies and continuing to operations and end-of-life activities. The business line relies heavily on strong client relations to conduct its operations. Stantec is active in the communities it serves and has structured its Power and Dams Business Line to provide comprehensive engineering and design services to clients of

2

all sizes and to be highly responsive to client needs through a network of small to midsize offices spread around North America and the globe.   Stantec is organized under the laws of the state of New York with its principal place of business in Broomfield, Colorado.

3.     Mehmet Arslan ("Arslan") is an adult individual who, upon information and belief, resides in the Commonwealth of Pennsylvania.   Arslan is the former Sector Leader, Power Delivery, for Stantec and now works for Defendant S&L.

4.     George H. Williams, Jr., ("Williams") is an adult individual who, upon information and belief, resides in the Commonwealth of Pennsylvania.   Williams is the former Senior Principal, Manager Power Delivery for Stantec and now works for Defendant S&L.

5.     Benjamin "Chad" Renshaw ("Renshaw") is an adult individual who, upon information and belief, resides in the State of Florida. Renshaw is the former Manager of Engineering at Stantec and now works for Defendant S&L.

6.     Sargent & Lundy, LLC ("S&L") is a Limited Liability Company organized under the laws of Illinois with its principal place of business at 55 East Monroe Street, Chicago, IL 60603.   S&L specializes in professional services for electric power and energy intensive clients, offering nuclear power, power delivery, and consulting services for customers throughout the United States.   S&L operates mainly in the Electric Power Sector.   S&L and Stantec compete directly for the same clients.   Upon information and belief,   S&L members reside in Illinois, Delaware and Tennessee.

## JURISDICTION AND VENUE

7.     Jurisdiction is proper pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds $75,000.00 exclusive of interest and costs and the dispute involves individuals and entities that are citizens of different states.   Indeed, Stantec is incorporated in the

261381521.v2

state of New York and the principal place of its business is in the state of Colorado. Arslan and Williams are citizens of the Commonwealth of Pennsylvania. Renshaw is a citizen of Florida. S&L, through its members, is considered a citizen of the states of Illinois, Delaware and Tennessee.

8.    Jurisdiction is also proper pursuant to the 28 U.S.C. § 1331 and 28 U.S.C. §1367 because Stantec has asserted a claim for statutory misappropriation of trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. section 1836, *et seq*., and all other claims are so related to Stantec's federal trade secrets claim that they form part of the same case or controversy under Article III of the United States Constitution.

9.    Immediate injunctive relief is sought pursuant to Fed.R.Civ.P. 65.

10.    Venue is proper in the United States District Court for the Eastern District of Pennsylvania because the unlawful conduct of S&L, Arslan, Williams and Renshaw arose in this judicial District. As discussed below, Defendants continue to cause irreparable harm to Stantec by soliciting Stantec employees and clients and by competing against Stantec for projects in which they were involved while employed by Stantec.

## **FACTUAL BACKGROUND**

### **Arslan's History of Violating Restrictive Covenants**

11.    Prior to commencing employment with Stantec in or around 2012, Arslan was employed by CG Power Solutions USA, Inc. ("CG Power").

12.    Upon information and belief, at CG Power, Arslan signed an employment agreement that, among other things, prohibited him from soliciting or encouraging, or causing others to solicit or encourage, CG Power's employees to terminate their employment with CG Power for a period of one (1) year after his employment with CG Power ended.

4

13.    Prior to or upon commencing employment with Stantec, however, Arslan failed to disclose to Stantec that he was under an agreement with CG Power not to solicit CG Power employees to terminate their employment with CG Power.

14.    Shortly after commencing employment with Stantec, Arslan, without Stantec's knowledge of the restrictive covenant prohibiting solicitation of CG Power employees, began to solicit CG Power employees to leave CG Power and work for Stantec.

15.    Upon learning that Arslan was violating the terms of his agreement, CG Power threatened litigation against Arslan and Stantec.

16.    Upon information and belief, under the threat of a lawsuit for violating his agreement not to solicit CG Power employees, Arslan executed a Consent Injunction that enjoined him from soliciting or encouraging, or causing others to solicit or encourage, CG Power's employees to terminate their employment with CG Power.

17.    Fast-forward eight (8) years and history has repeated itself.  Indeed, Arslan has again ignored the restrictions in his prior employment agreement – this time with Stantec – and has solicited Stantec employees to resign and work for S&L.  However, this time around, Arslan has gone further by soliciting work from Stantec clients in violation of his agreement with Stantec and by stealing Stantec's confidential, trade secret information as well as the intellectual property of Stantec and its clients.

### Arslan's Agreement with Stantec

18.    Arslan had been employed with Stantec since 2012.  In his most recent role, Arslan's title at Stantec was Sector Leader, Power Delivery.  Arslan worked primarily in the Power and Dams Business Line.

261381521.v2

19.     At the time of his resignation from Stantec, Arslan was responsible for Power Delivery in all of North America for Stantec.

20.     On or about May 29, 2019, Arslan executed an Employment Agreement with Stantec in consideration of his appointment to Vice President with Stantec.

21.     Arslan's Agreement with Stantec prohibited him for a period of one (1) year after his employment with Stantec ended from "directly or indirectly inducing or attempting to induce any employee of Stantec to leave their employment with Stantec." *See* Exhibit A (Arslan Employment Agreement).

22.     Further, Arslan's Employment Agreement prohibited him from "soliciting work from or performing work for clients to which he has, or the business unit for whom he was in responsible charge at Stantec, has provided services during the last year of his employment with Stantec." *See* Exhibit A (Arslan Employment Agreement).

**Stantec Confidentiality Policy**

23.     Stantec has spent significant time, effort, and money to develop, acquire, maintain, and protect its confidential and proprietary business information, including its customer and client lists, its pricing information, its methods of pricing and cost, and its client files and information. This confidential and proprietary business information is password protected, not available to the general public, and restricted to only those people who "need to know" the information in the necessary course of business. Stantec has created policies and procedures that protect its confidential information and trade secrets.

24.     Stantec's confidential information is among its most valuable assets, provides Stantec with a competitive advantage, and would be very valuable to a competitor (like S&L), and is deserving of protection under the law.

6

25.    Stantec's Confidentiality Policy, attached hereto as Exhibit "B", and incorporated herein, clearly defines confidential information:

> In the course of employment, Stantec employees will inevitably receive, handle, or otherwise be exposed to the Company's confidential information. Such information is generally information that the public does not have access to. This includes, among other things, procedures, policies, strategies, research, investigations, business plans and transactions, investments, customer lists, contracts, project data, legal files, financial data, business projections, budgets, trade secrets, designs, plans, technology, confidential reports, and all other information, knowledge or data of any kind or nature relating to Stantec's or its clients' businesses, Stantec's employees, or Stantec's investors. This also includes materials accumulated or developed by an employee in connection with work assignments at Stantec—including **emails**; notes; records; working papers; files; research material; literature; and engineering, architectural, or other design documents or concepts—and any technological concepts or devices resulting from these assignments.

26.    Further, Stantec's Confidentiality Policy States that, "[a]n employee must not copy, secure, transmit, keep, store, gain from, sell, or use Company information for any purpose other than to undertake assignments with Stantec." *See*, Exhibit B (Stantec Confidentiality Policy).

27.    The Confidentiality Policy sets forth practices that employees must follow in order to protect such Company information. *Id.*

28.    The Confidentiality Policy requires that "[o]n termination of employment, an employee must return all confidential information in the employee's possession." *Id.*

**Arslan's Breach of the Employment Agreement with Stantec**

29.    On July 21, 2020, Arslan notified Stantec that he was resigning his employment with Stantec. At no time prior to leaving Stantec did Arslan advise that he had accepted a job with S&L – a direct competitor of Stantec.

30.    Trusting that Arslan would honor the terms of his Agreement with Stantec not to solicit employees and clients, rather than insisting that Arslan immediately leave, Stantec allowed Arslan to remain with Stantec for approximately three (3) weeks until August 7, 2020. Upon

7

261381521.v2

information and belief, it was during this time that Arslan continued his plan to recruit Stantec employees to join him at S&L and to solicit Stantec clients to move their work to S&L.

31.    Arslan's last day at Stantec was August 7, 2020.

32.    Moreover, knowing that he was leaving Stantec to work for S&L (a direct competitor) - Arslan used a personal USB device on his Stantec-issued computer to access and, upon information and belief, download confidential documents including, but not limited to, Stantec pricing information, client files and contact information, and Stantec Forms and Procedures. *See* Exhibit J (Certification of Steve Hilary, forensic computer examiner ["Hilary Cert."],¶¶ 4, 13-14). Upon information and belief, Arslan is using this confidential information of Stantec at S&L to continue the Defendants' campaign of soliciting Stantec clients.

33.    Prior to his last day of employment at Stantec, Arslan accessed and, upon information and belief, downloaded confidential and proprietary information and trade secrets of Stantec to a personal USB device, including, but not limited to: ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████ Stantec's Confidentiality Policy required Arslan to return this information – not download it to a personal storage device where he could thereafter use it at S&L to gain a competitive advantage over Stantec. *See* Exhibit B (Stantec Confidentiality Policy); Exhibit J (Hilary Cert., ¶¶ 4, 13-14).

34.    Upon information and belief, Arslan and S&L are now using this confidential and proprietary information of Stantec to solicit Stantec clients to gain a competitive advantage over Stantec.

8

35.     Arslan's conduct in accessing and appropriating confidential pricing and client information was in direct violation of his Agreement with Stantec that prohibited him from, "copying, securing, transmitting, keeping, storing, gaining from, selling or using Stantec's proprietary information for any purpose other than in the performance of my duties at Stantec." *See* Exhibit A (Arslan Employment Agreement).

36.     This confidential and proprietary business information is password protected, not available to the general public, and restricted to only those people who "need to know" the information in the necessary course of business.

37.     Due to his role with Stantec, it trusted Arslan with access to this confidential and proprietary information.

38.     Stantec never authorized Arslan to use or disclose this confidential proprietary information outside the scope of his employment with Stantec, or for his own benefit, or for the benefit of a competitor, all of which is prohibited conduct.

39.     S&L competes directly with Stantec in the Power Delivery Industry, including the Power and Dams business line.

40.     Arslan's employment as a Project Director with S&L began almost immediately after his last day at Stantec.  Further, upon information and belief, almost immediately after his tenure with S&L began, Arslan – with S&L's authority – made plans to open an S&L office at 1 Meridian Boulevard in Wyomissing, Pennsylvania, in the same building where Arslan worked for Stantec.  Upon information and belief, it is from this location that Arslan and S&L intend to continue executing their plan to solicit Stantec's employees and clients.

41.     On September 16, 2020, counsel for Stantec advised Arslan and S&L that Arslan violated the terms of his Agreement with Stantec by soliciting Stantec clients to shift their business

261381521.v2

to S&L and by soliciting Stantec employees to leave Stantec and join S&L. *See* Exhibit C (Correspondence from Stantec to S&L). Stantec provided Arslan and S&L with a copy of Arslan's Employment Agreement with Stantec. Stantec demanded that Arslan immediately cease and desist from violating the non-solicitation clauses of his Stantec Agreement. *Id.*

42.     Upon information and belief, rather than causing Arslan to honor the terms of his Stantec Agreement, S&L conspired with Arslan to solicit Stantec clients and employees. Indeed, S&L – with full knowledge of Arslan's Agreement with Stantec – permitted him to continue soliciting Stantec clients and employees and continued to hire Stantec employees.

43.     In fact, even after the September 16, 2020 letter advising Arslan to cease and desist, S&L extended several offers of employment to Stantec employees.

44.     Despite Stantec's insistence that offers of employment to Stantec employees be withdrawn, S&L did not withdraw the offers of employment to Stantec employees, and they have subsequently left the employ of Stantec and have begun employment at S&L. *See* Exhibit G (Correspondence from Stantec to S&L dated Oct. 1, 2020).

45.     ███████████████████████ was a long-standing client of Stantec's. The business unit for whom Arslan was in responsible charge was providing services to ████ during the last year of Arslan's employment with Stantec.

46.     Upon information and belief, shortly after commencing employment with S&L, Arslan met with representatives of ████ in an effort to encourage and induce them to transfer their business to S&L. Indeed, Defendant Williams, then Stantec's Senior Principal, Manager Power Delivery, informed David Bernier, Stantec's Senior Vice President, Business Leader Power & Dams, that Arslan was meeting with ████

47.    Upon information and belief, Arslan – with S&L's authority – communicated to ▮▮▮ that Stantec would be unable to support ▮▮▮'s projects now that he had resigned from Stantec. Indeed, upon information and belief, Arslan disparaged Stantec's capabilities in the execution of his plan to divert ▮▮▮ work from Stantec to S&L.

48.    Consequently, in October 2020, and as a direct result of Arslan and S&L's solicitation of ▮▮, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Upon information and belief, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as a direct result of Arslan's and S&L's solicitation of ▮▮. In addition, since Arslan's departure, there have been projects that previously were targeted for award to Stantec that, upon information and belief, have been awarded to S&L.

49.    Upon information and belief, on July 29, 2020 – a week before his last day at Stantec – Arslan emailed and subsequently spoke with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ another client of Stantec's. Arslan spoke with ▮▮▮▮▮▮ in an effort to solicit ▮▮ for business in direct violation of his Agreement with Stantec. *See* Exhibit D (Emails between M. Arslan and ▮▮▮▮▮). Mr. Ayadi controlled a significant contract that Stantec had executed with ▮▮.

50.    In addition to soliciting Stantec's clients, Arslan also solicited former colleagues at Stantec to service those stolen Stantec clients. Shortly after commencing employment with S&L, Arslan began to successfully solicit Stantec employees to leave Stantec and join S&L.

51.    Upon information and belief, during his last week at Stantec, Arslan solicited Salesi Sika, Stantec's Area Lead – Power Delivery US Northwest, to leave Stantec and join him at S&L. This solicitation of Mr. Sika was in direct violation of Arslan's Agreement with Stantec. *See* Exhibit E (Email between M. Arslan and S. Sika).

11

Arslan's Solicitation of Stantec Employees and Employee Conversion of Stantec Confidential and Proprietary Information

George Williams

52.　As a result of Arslan's solicitation, Williams, an Engineer for Stantec since 2015 and the Senior Principal, Manager, Power Delivery in 2020, resigned his employment with Stantec effective October 1, 2020.

53.　Upon information and belief,　Arslan – with S&L's knowledge and approval – began directly soliciting Williams to leave and take a position with S&L. Upon information and belief, Arslan's solicitation of Williams included face-to-face meetings whereby he encouraged and induced Williams to resign his employment with Stantec and pursue employment with S&L. Upon information and belief, Arslan's recruitment of Williams was designed to advance S&L's ability to redirect existing Stantec clients to S&L.

54.　Williams initially interviewed with S&L on August 12, 2020 – less than one (1) week after Arslan began his employment with S&L.  Williams interviewed for a Project Associate Position, Transmission Line & Substation Projects.

55.　Shortly after his last day at Stantec on October 1, 2020, Williams commenced employment with S&L.

56.　However, before leaving Stantec, Williams (like Arslan) inserted a personal USB drive into his Stantec-issued laptop computer on several occasions, accessed, and upon information and belief, downloaded confidential and proprietary information of Stantec onto the USB device. This confidential and proprietary information included but was not limited to: ██████████ ████████████████████████████████████ and Stantec confidential and proprietary information and trade secrets. *See* Exhibit J (Hilary Cert. at ¶¶ 10-11).

261381521.v2

57.     Due to his role with Stantec, Williams was entrusted with extensive confidential, proprietary and trade secret information including, but not limited to, client information and pricing information.  Stantec never authorized Williams to retain, use, take, or disclose Stantec's confidential, proprietary and trade secret information outside the scope of his employment with Stantec for his own benefit, or for the benefit of S&L, all of which is prohibited conduct.

58.     Williams Agreement with Stantec provided that, "during and for one year after your employment, you won't induce or solicit any Stantec employee to leave their employment with Stantec and you won't compete with Stantec for any projects in which you've been involved." *See* Exhibit F (Williams Employment Agreement).  Further, Williams' employment with Stantec was subject to his compliance with Stantec's "policies and practices," including its Confidentiality Policy.  *Id.*; *see also* Exhibit B (Stantec Confidentiality Policy).

59.     Further, Williams returned to Stantec's office on October 2, 2020 (the day **after** his last day at Stantec) and asked to get some things from his office where his computer remained and again inserted a personal USB device into his Stantec-issued laptop computer. *See* Exhibit J (Hilary Cert. at ¶¶ 10-11).

60.     Pursuant to Williams' Agreement with Stantec and consistent with Stantec's Policies and Practices, Williams was prohibited from using this confidential information for his personal benefit or for the benefit of S&L.  Moreover, Stantec's Confidentiality Policy required him to return this information – not download it to a personal storage device – upon his last day at Stantec.  *See* Exhibit F (Williams Employment Agreement); Exhibit B (Stantec Confidentiality Policy).

61.     Upon information and belief, Williams, Arslan and S&L, are now using this confidential and proprietary information of Stantec to solicit Stantec clients to gain a competitive

261381521.v2

advantage over Stantec. Further, upon information and belief, and in violation of his Employment Agreement with Stantec, Williams is actively working to compete against Stantec on projects that he was previously involved with while employed by Stantec.

62.    Williams' resignation from Stantec on October 1, 2020, was the culmination of Arslan's efforts to recruit him from Stantec to S&L.

63.    Williams' conduct in downloading Stantec's confidential, proprietary and/or trade secret information was in violation of Stantec's policies regarding the protection, use, and disclosure of confidential information.

<u>Benjamin "Chad" Renshaw</u>

64.    Benjamin "Chad" Renshaw ("Renshaw") was a long-standing employee of Stantec. Renshaw's title at Stantec was Manager of Engineering.

65.    Upon information and belief, since early September 2020, Arslan and Williams – with S&L's knowledge and approval – began directly soliciting Renshaw to leave Stantec and join S&L.

66.    Upon information and belief, Arslan's and Williams' solicitation and recruitment of Renshaw in September and October 2020, included telephone conversations and email communications.

67.    On September 3, 2020, Renshaw interviewed with S&L. Renshaw subsequently announced his resignation from Stantec on October 20, 2020. Renshaw's last day of employment with Stantec was October 30, 2020. Upon information and belief, he immediately began his employment with S & L.

68.    However, before leaving Stantec, Renshaw (like Williams and Arslan) inserted several personal USB devices into his Stantec-issued laptop computer, accessed, and upon

14

information and belief, downloaded confidential and proprietary information and trade secrets of Stantec onto the USB device. This confidential and proprietary information and trade secrets included but was not limited to: ████████████████████

████████████████████████████████████████████████

████ (6) Stantec Rates; (7) Stantec Proposals; and (8) Stantec and client contracts. *See* Exhibit J Hilary Cert., ¶¶ 15-19).

69.    Due to his role with Stantec, Renshaw was entrusted with extensive confidential, proprietary and trade secret information including, but not limited to, client information and pricing information.  Stantec never authorized Renshaw to retain, use, take, or disclose Stantec's confidential, proprietary and trade secret information outside the scope of his employment with Stantec for his own benefit, or for the benefit of S&L, all of which is prohibited conduct.

70.    Renshaw's Agreement with Stantec provided that, "during and for one year after your employment, you won't induce or solicit any Stantec employee to leave their employment with Stantec and you won't compete with Stantec for any projects in which you've been involved." *See* Exhibit I (Renshaw Employment Agreement).  Upon information and belief, and in violation of his Employment Agreement with Stantec, Renshaw is actively working to compete against Stantec on projects that he was previously involved with while employed by Stantec.

71.    Further, Renshaw's employment with Stantec was subject to his compliance with Stantec's "policies and practices," including its Confidentiality Policy.  *Id.; see also* Exhibit B (Stantec Confidentiality Policy).

72.    Renshaw's resignation from Stantec on October 20, 2020, was the culmination of Defendants' efforts to recruit him from Stantec to S&L. His last date of employment was October 30, 2020.

<u>Arslan's Additional Effort to Undermine Stantec's Capabilities and to Solicit Stantec's Clients</u>

73.     In addition to soliciting Stantec employees and clients, upon information and belief, Arslan initiated rumors in the industry that Stantec is moving away from utility transmissions and station engineering in Stantec's Philadelphia office.

74.     Arslan's motive in communicating these false rumors is clear: (1) to indirectly solicit Stantec employees to leave Stantec for fear that their positions are not secure; and (2) to indirectly solicit Stantec clients to withdraw their existing work from Stantec and transfer it to S&L, and to cease engaging Stantec for new work.

**Stantec Has Suffered and Will Suffer Irreparable Harm As A Result of Defendants' Unlawful Conduct**
**And Requires Injunctive Relief**

75.     As a direct and proximate result of Defendants' actual, threatened and imminent conduct, Stantec has suffered, and will continue to suffer, significant irreparable harm, as well as incalculable economic injury and loss.  The harm and injury includes the continued loss of employees (that Stantec has invested significant time and money to train and develop), loss of clients, and loss of goodwill.

76.     Upon information and belief, Arslan and S&L actively continue to target additional Stantec employees for unlawful acquisition.

77.     Upon information and belief, Arslan and S&L actively continue soliciting Stantec clients in direct violation of Arslan's Employment Agreement with Stantec.  Further, in direct violation of their Employment Agreements with Stantec, and upon information and belief,

16

261381521.v2

Williams and Renshaw are actively working to compete against Stantec on projects that they were previously involved with while employed by Stantec.

78.    The ongoing nature of Defendants' unlawful actions necessitates judicial intervention in the form of an immediate injunction to: (1) preclude Arslan from continuing to solicit Stantec employees and clients; (2) preclude S&L from hiring Stantec employees that were improperly solicited; and (3) preclude Williams and Renshaw from competing against Stantec on projects that they were previously involved with while employed by Stantec.

79.    In light of the likely significant financial losses incurred by virtue of Defendants' actions, Stantec is entitled to all remedies available under law and equity, including, but not limited to compensatory damages, punitive damages, costs of suit and attorney's fees in an amount to be proved at trial.

80.    Arslan and S&L were on notice of the ongoing irreparable harm to Stantec resulting from Defendants' unlawful activity.

81.    Arslan (and by copy, S&L) was sent a cease and desist letter on September 16, 2020, from counsel for Stantec. *See* Exhibit C (Correspondence from Stantec to S&L). Further, Williams was sent a letter from Stantec on September 30, 2020, reminding him of the terms and conditions of his Employment Agreement with Stantec that prohibited him from soliciting Stantec employees and from competing against Stantec on projects in which he was involved at Stantec. S*ee* Exhibit H (Correspondence from Stantec to Williams dated Sept. 30, 2020).

82.    Upon information and belief, Arslan and S&L did nothing to cease and desist their conduct in response to the above demands. Upon information and belief, Williams failed to honor the terms and conditions of his Employment Agreement that he was reminded of on September 30, 2020.

261381521.v2

83.    Arslan agreed that Stantec would be entitled to injunctive relief for a breach of the non-solicitation covenant in his Stantec Agreement and that Stantec shall be entitled to injunctive relief, including an interim injunction, to enforce the covenant prohibiting Arslan from soliciting Stantec employees and clients. *See* Exhibit A (Arslan Employment Agreement).

## COUNT I
## UNFAIR COMPETITION/RAIDING
### (Stantec v. All Defendants)

84.    Stantec re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

85.    Upon information and belief, Defendants directly and intentionally conspired to solicit and raid Stantec's employees on behalf of S&L, a direct competitor of Stantec.

86.    Defendants knew or should have known that this unfair and unlawful practice would result in significant economic injury to Stantec.

87.    Defendants took these steps for the purpose of: (1) causing harm to Stantec; (2) diverting Stantec's customers to S&L; and (3) soliciting Stantec's employees to leave Stantec and join S&L.

88.    The foregoing actual and/or threatened conduct of Defendants constitutes unfair methods of competition.

89.    The above-described actual and/or threatened conduct of Defendants is the direct and proximate cause of immediate and irreparable harm to Stantec.

90.    Defendants' actual and/or threatened actions will continue to cause Stantec irreparable harm if not enjoined.

WHEREFORE, Stantec respectfully requests judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

261381521.v2

## COUNT II
## TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS AND/OR CONTRACTUAL RELATIONSHIP
### (Stantec v. Arslan and S&L)

91.    Stantec re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

92.    Arslan and S&L knowingly and willfully interfered with, and continue to interfere with, the contractual relationship between Stantec and its employees by soliciting Stantec employees to leave their employment and join S&L.

93.    Arslan and S&L were and are fully aware that the solicited Stantec employees share an advantageous business and/or contractual relationship with Stantec and that Stantec relied on said arrangements for its financial prosperity.

94.    At all material times, Arslan and S&L were aware that the foregoing actions were in direct violation of the contractual agreements that Stantec had with its employees, as well as said individuals' fiduciary duties and duties of loyalty.

95.    At all material times, S&L was aware of – yet disregarded – the contractual obligations owed to Stantec by Arslan.

96.    Arslan and S&L knowingly and willfully interfered with, and continue to interfere with, the relationship between Stantec and its clients by soliciting Stantec clients to pull their work from Stantec and engage S&L.

97.    Arslan and S&L were and are fully aware that the solicited clients share an advantageous business and/or contractual relationship with Stantec and that Stantec relied on said arrangements for its financial prosperity.

19

98.    At all material times, Arslan and S&L were aware that the foregoing actions were in violation of Arslan's Agreement with Stantec.

99.    At all material times, S&L was aware of – yet disregarded – the contractual obligations owed to Stantec by Arslan.

100.    The above-described actual and/or threatened conduct of Arslan and S&L is the direct and proximate cause of immediate and irreparable harm to Stantec.

101.    Arslan's and S&L's actual and/or threatened actions will continue to cause Stantec irreparable harm if not enjoined.

WHEREFORE, Stantec respectfully requests judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

### COUNT III
### BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY
### (Stantec v. Individual Defendants)

102.    Stantec re-alleges and incorporates by reference all the allegations of the preceding paragraphs as if fully set forth herein.

103.    Arslan, Williams and Renshaw were long-tenured leaders for Stantec and entrusted with positions of responsibility.

104.    Arslan owed fiduciary duties and the duty of loyalty to Stantec by virtue of his Agreement, employment and position at Stantec.

105.    Williams owed fiduciary duties and the duty of loyalty to Stantec by virtue of his employment and position at Stantec.

106.    Renshaw owed fiduciary duties and the duty of loyalty to Stantec by virtue of his employment and position at Stantec.

107.    The duties of Individual Defendants included the duty of undivided loyalty and the duty to act with the utmost fidelity, integrity and honesty, and a duty not to act in concert with other Stantec employees, or with any third parties, contrary to the interest of Stantec.

108.    In the scope of their employment, Stantec entrusted Individual Defendants with Stantec's confidential and proprietary information.

109.    While still employed by Stantec, Arslan breached his fiduciary duties and duty of loyalty to Stantec by accessing and, upon information and belief, downloading confidential and proprietary information including but not limited to, Stantec's pricing information, client contact information and other client files to a personal USB device. He did so before he announced his resignation, with the intent of using Stantec's confidential and proprietary information to solicit Stantec employees and clients on behalf of S&L.

110.    While still employed by Stantec, upon information and belief, Arslan breached his fiduciary duties and duty of loyalty, by, among other things, acting in concert with S&L:

      (a) to solicit Stantec employees on behalf of S&L; and

      (b) To solicit Stantec clients on behalf of S&L.

111.    While still employed by Stantec, Williams breached his fiduciary duties and duty of loyalty to Stantec by accessing and, upon information and belief, downloading confidential and proprietary information including, but not limited to, Stantec client files and sensitive pricing information to a personal USB device.

112.    While still employed by Stantec, Renshaw breached his fiduciary duties and duty of loyalty to Stantec by accessing and, upon information and belief, downloading confidential and proprietary information including, but not limited to, Stantec client files and sensitive pricing information to a personal USB device.

261381521.v2

113.    At all relevant times and by virtue of his critical role with Stantec, each Individual Defendant knew or should have known that this unfair and unlawful practice would result in significant injury to Stantec.

114.    The above-described actual and/or threatened conduct of Individual Defendants is the direct and proximate cause of immediate and irreparable harm to Stantec.

115.    Arslan's, Williams' and Renshaw's actual and/or threatened actions will continue to cause Stantec irreparable harm if not enjoined.

WHEREFORE, Stantec respectfully requests judgment in its favor and against Arslan, Williams, and Renshaw as set forth in its Prayer for Relief.

## COUNT IV
## BREACH OF CONTRACT
## (Stantec v. Individual Defendants)

116.    Stantec re-alleges and incorporates by reference all the allegations of the preceding paragraphs as if fully set forth herein.

117.    Arslan executed a valid and enforceable Agreement with Stantec that precluded him from, among other things:

a.    Soliciting – directly or indirectly – any Stantec employees from leaving their employment with Stantec for a period of one (1) year after his employment with Stantec ends; and

b.    Soliciting work from or performing work for clients to which he had, or the business unit for whom he was in responsible charge at Stantec, had provided services to during the last year of his employment with Stantec.

261381521.v2

c.    Copying, securing, transmitting, keeping, storing, gaining from, selling or using Stantec's information for any purposes other than in the performance of his duties at Stantec.

118.    By virtue of the foregoing actual and threatened conduct, Arslan has knowingly and willfully breached his Agreement with Stantec and, as a direct and proximate cause of Arslan's knowing and willful breach of contract, Stantec has and will continue to suffer great economic injury and loss, all to the direct gain of Defendants.

119.    The above-described actual and/or threatened conduct of Arslan is the direct and proximate cause of immediate and irreparable harm to Stantec and such conduct will continue to case Stantec irreparable harm if not enjoined.

120.    Williams and Renshaw executed valid and enforceable agreements with Stantec that precluded them from, among other things: (1) competing against Stantec for any projects in which they were involved while employed by Stantec; and (2) copying, securing, transmitting, keeping, storing, gaining from, selling, or using confidential Stantec information for any purpose other than to undertake assignments with Stantec.

121.    By virtue of the foregoing actual and threatened conduct, Williams and Renshaw have knowingly and willfully breached their Agreements with Stantec and, as a direct and proximate cause of their knowing and willful breach of contract, Stantec has and will continue to suffer great economic injury and loss, all to the direct gain of Defendants.

122.    The above-described actual and/or threatened conduct of Williams and Renshaw is the direct and proximate cause of immediate and irreparable harm to Stantec and such conduct will continue to case Stantec irreparable harm if not enjoined

261381521.v2

WHEREFORE, Stantec respectfully requests judgment in its favor, and against the Individual Defendants, as set forth in its Prayer for Relief.

## COUNT V
## CIVIL CONSPIRACY
### (Stantec v. All Defendants)

123.    Stantec re-alleges and incorporates by reference all the allegations of the preceding paragraphs as if fully set forth herein.

124.    Defendants agreed and conspired to engage in unlawful competition, all to the detriment of Stantec.  The aforementioned conspiracy was furthered by Defendants' unlawful conduct as described herein.

125.    The above-described actual and/or threatened conduct of the Defendants is the direct and proximate cause of immediate and irreparable harm to Stantec.

126.    The Defendants' actual and/or threatened actions will continue to cause Stantec irreparable harm if not enjoined.

WHEREFORE, Stantec respectfully requests Judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

## COUNT VI
## MISAPPROPRIATION/CONVERSION OF TRADE SECRETS AND/OR CONFIDENTIAL BUSINESS INFORMATION UNDER THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT
### (Stantec v. All Defendants)

127.    Stantec re-alleges and incorporates by reference all the allegations of the preceding paragraphs as if fully set forth herein.

128.    While working at Stantec, Individual Defendants were provided access to Stantec's confidential and proprietary information including trade secrets, which was deserving of protection under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa.C.S.A. §5301 et seq.

261381521.v2

129.   As part of their employment agreements with Stantec, Arslan, Williams and Renshaw agreed not to share Stantec's confidential and proprietary information nor to use it for their own benefit and/or the benefit of a new employer that was in direct competition with Stantec.

130.   As set forth in detail above, Individual Defendants accessed and downloaded confidential and proprietary information from Stantec in preparation for their departure and in anticipation for their work with S&L, a direct competitor of Stantec.

131.   On information and belief, Arslan, Williams and Renshaw took files that were password protected and not available to the general public including, client contact information, client files with specifications of projects, detailed schematics of projects and pricing list --- all confidential information that, in the hands of its competitor, could do significant economic damage to Stantec.

132.   Stantec took and continues to take reasonable steps to maintain the confidentiality of its business records, client lists, project pricing and plans/schematics of its work for its clients.

133.   Arslan's, Williams' and Renshaw's unauthorized access to and misappropriation of Stantec's trade secrets and/or proprietary and confidential material  in the weeks and days leading up to their departures to work for a competitor was without Stantec's knowledge or authorization.

134.   As described in the foregoing paragraphs, Arslan, Williams and Renshaw knowingly acquired Stantec's trade secrets and/or confidential business information by improper means in violation of 12 Pa. C.S.A. §§5304 and 5305.

135.   Arslan's, Williams' and Renshaw's actions in misappropriating and converting Stantec's trade secrets and confidential business information for their own gain has caused and will cause substantial damage to Stantec and was undertaken willfully, maliciously and in reckless

25

261381521.v2

disregard for Stantec's rights. As a result, Stantec is entitled to recover exemplary damages and attorney's fees as permitted by 12 Pa.C.S.A. §§ 5304 and 5305.

136.    Upon information and belief, S&L directed, authorized, participated and/or otherwise benefitted from the misappropriation of Stantec's confidential and proprietary trade secret information.

WHEREFORE, Stantec respectfully requests Judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

**COUNT VII**
**MISAPPROPRIATION OF TRADE SECRETS AND/OR CONFIDENTIAL BUSINESS INFORMATION UNDER THE DEFEND TRADE SECRETS ACT OF 2016**
**(Stantec v. All Defendants)**

137.    Stantec re-alleges and incorporates by reference all the allegations of the preceding paragraphs as if fully set forth herein.

138.    While employed by Stantec, Individual Defendants had access to Stantec's confidential trade secret information, including, most importantly, its pricing and client information.

139.    The trade secret information retained by Individual Defendants is related to Stantec's services that are used in interstate commerce.

140.    As set forth in its company policies, Stantec considers its pricing and client information to be confidential and proprietary, and it has taken significant steps to maintain the confidential nature of this information.

141.    Upon information and belief, Individual Defendants have used and are continuing to use Stantec's confidential trade secret information to divert Stantec's clients to S&L. In doing so, Individual Defendants are maliciously and willfully using misappropriated trade secret information to their advantage in direct competition with Stantec.

261381521.v2

142.    Upon information and belief, S&L directed, participated and/or otherwise benefitted from the misappropriation of Stantec's trade secret information.

143.    As a result of Defendants' misappropriation and use of Stantec's trade secret information, Defendants have violated the Defend Trade Secrets Act of 2016 (18 U.S.C. §1836(b)(1)).

144.    As a proximate result of Defendants' violation of the Defend Trade Secrets Act of 2016, Stantec has sustained irreparable harm and damages in an incalculable amount that Stantec will attempt to establish.

145.    The Defendants actual and/or threatened actions will continue to cause Stantec irreparable harm if not enjoined.

WHEREFORE, Stantec respectfully requests Judgment in its favor, and against Defendants, as set forth in its Prayer for Relief

## COUNT VIII
## COMMON LAW CONVERSION OF STANTEC'S CONFIDENTIAL AND PROPRIETARY BUSINESS INFORMATION
### (Stantec v. Defendants)

146.    Stantec re-alleges and incorporates by reference all the allegations of the preceding paragraphs as if fully set forth herein.

147.    While working at Stantec, Individual Defendants were provided access to Stantec's confidential and proprietary information.

148.    Individual Defendants, without express or implied consent, and without justification, gained possession of and divested from Stantec's possession and control, its confidential and proprietary business information including, but not limited to, copies of client contact information, pricing lists, detailed technical and design information client projects.

27

149.    Individual Defendants have and/or will utilize Stantec's confidential and proprietary business information to unlawfully compete against Stantec with their new employer, S&L.

150.    S&L, upon information and belief, benefitted from the Individual Defendants' conversion of Stantec's confidential and proprietary business information.

WHEREFORE, Stantec respectfully requests Judgment in its favor, and against Defendants, as set forth in its Prayer for Relief

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stantec, respectfully requests that, due to the ongoing unlawful acts of Defendants, the Court:

(1)    Enjoins Individual Defendants, for a period of one year, from directly or indirectly soliciting Stantec employees to leave their employment with Stantec; and

(2)    Enjoins Defendant Arslan, for a period of one year, from soliciting or performing work for clients to which he has, or the business unit for whom he was in responsible charge at Stantec had provided services to during the last year of his employment at Stantec; and

(3)    Enjoins Defendants Williams and Renshaw, for a period of one year, from competing against Stantec for projects for any clients with which they have been involved during their tenure at Stantec; and

(4)    Enjoins Defendant S&L, for a period of one year, from hiring any Stantec employees that were solicited, directly or indirectly, by any of the Individual Defendants; and

(5)    Compels Defendants to cease and refrain from using any confidential, proprietary or trade secret information of Stantec; and

261381521.v2

(6)     Compels Defendants to immediately return to Stantec all originals and copies of any documents, information, data, files, or other materials, in any form, that Defendants, individually or collectively, took, copied, caused to be taken or copied, or received from Stantec; and

(7)     Awards Stantec compensatory damages, punitive damages, and statutory damages resulting from Defendants' conduct.

Stantec further prays that the court will award Stantec costs of suit and attorneys' fees, as well as any other relief that this Court deems appropriate.

**JURY DEMAND**

Stantec hereby demands a jury.

**DEMAND TO PRESERVE EVIDENCE**

All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Stantec, its causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, laptop computers, mobile phones, smartphones, electronic data storage, digital images, computer images, cache memory, searchable data, emails, calendars, spreadsheets, employment files, memos, text messages, any and all online social or work related websites, entries of social networking sites (including, but not limited to Facebook, Twitter, etc.) and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

261381521.v2

Respectfully submitted,

CLARK HILL PLC

Dated: _12 - 4 - 20_                          _____

Lauri A. Kavulich, Esquire (PA #56476)
Daniel J. McGravey, Esquire (PA #83176)
Lisa C. Eldridge, Esquire (PA# 62794)
2001 Market Street, Suite 2620
Philadelphia, PA 19103
(215) 640-8500
lkavulich@clarkhill.com
dmcgravey@clarkhill.com
leldridge@clarkhill.com
*Attorneys for Plaintiff*

261381521.v2

## VERIFICATION

I, David R. Bernier, Senior Vice President Business Leader – Power & Dams for Stantec Consulting Services Inc., hereby state that I am authorized to make this Verification on behalf of Stantec Consulting Services, Inc., and I further verify that the statements set forth in the foregoing Complaint for Injunctive and Other Relief, and Damages are true and correct to the best of my knowledge, information and belief.  I understand that any false statements herein are made subject to the penalties of 18 Pa. C.S.A. Section 4904, relating to unsworn falsification to authorities, and further subject to the penalties of perjury under 28 U.S.C. Section 1746.

David R. Bernier

DATED:  3 December 2020