UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| STANTEC CONSULTING SERVICES INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:20-cv-06121 |
| | : | |
| MEHMET ARSLAN; | : | |
| GEORGE H WILLIAMS, JR.; | : | |
| BENJAMIN RENSHAW; and | : | |
| SARGENT & LUNDY LLC, | : | |
| Defendants. | : | |

_____

**O P I N I O N**
**Plaintiff's Motion for Preliminary Injunction, ECF Nos. 2, 11 - Denied**
**Plaintiff's Motion for Expedited Discovery, ECF No. 3 - Denied**
**Defendants' Motion to Dismiss, ECF No. 26 – Denied in part, Granted in part**

**Joseph F. Leeson, Jr.**                                        **September 30, 2021**
**United States District Judge**


I.      **INTRODUCTION**

Plaintiff Stantec Consulting Services, Inc. initiated this action against three former

employees and the company where they now work, Sargent & Lundy, LLC ("S&L") for conduct

arising from the employees' alleged violations of non-compete employment agreements and their

alleged misappropriation of confidential information.  Stantec filed motions for a preliminary

injunction and to expedite discovery, which Defendants, who filed a motion for partial dismissal,

oppose.  For the reasons set forth below, a hearing on the motion for a preliminary injunction and

for expedited discovery are unnecessary and the motion for a preliminary injunction is denied.

The motion to dismiss is denied in part and granted in part without prejudice for leave to amend

those claims.

## II.      PROCEDURAL BACKGROUND

Stantec filed a Complaint alleging that one of its former employees, Arslan, solicited

Stantec employees to resign and work for S&L, as well as soliciting Stantec customers, in

violation of his Employment Agreement.  *See* Compl., ECF No. 1.  It further alleges that Arslan

downloaded proprietary information and trade secrets for use and disclosure/use in violation of

Stantec's Confidentiality Policy.  The Complaint alleges that Williams and Renshaw also

violated the Confidentiality Policy by downloading trade secrets for disclosure/use and began

working for S&L in violation of non-compete employment agreements with Stantec.

The Complaint asserts the following claims: (I) unfair competition/raiding; (II) tortious

interference with business relationships; (III) breach of fiduciary duty/duty of loyalty; (IV)

breach of contract; (V) civil conspiracy; (VI) conversion/misappropriation of trade secrets and/or

confidential information under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa.

C.S. § 5301 *et seq.*; (VII) misappropriation of trade secrets/confidential information under the

Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq.*; and (VIII) conversion.

Attached to the Complaint are, *inter alia*, Stantec's Employment Agreement with Arslan,[1] offer

of employment letters to Williams and to Renshaw,[2] and Stantec's Confidentiality Policy.

Shortly after initiating this action, Stantec filed motions for a preliminary injunction and

---

[1]      Arslan's Employment Agreement includes a non-solicitation provision, which states: "I agree that during my employment and for one (1) year after my employment ceases, I will not directly or indirectly induce or attempt to induce any employee of Stantec to leave their employment with Stantec nor will I solicit work from or perform work for clients to which I have, or the business unit for whom I was in responsible charge at Stantec has provided services during the last year of my employment with Stantec."  *See* Agmt., Compl. at Ex. A, ECF No. 1-1.

[2]      The offer letters to Williams and Renshaw state that a condition of employment is: "during and for one year after your employment, you won't induce or solicit any Stantec employee to leave their employment with Stantec and you won't compete with Stantec for any projects in which you've been involved."  *See* Compl. at Exs. F, I.

to expedite discovery.  Stantec seeks to enforce the non-solicitation and non-competition agreements against Arslan, Williams, and Renshaw, and to enjoin S&L from hiring any Stantec employees that were solicited.  *See* PI Mot., ECF Nos. 2, 11.  The motions also ask the court to direct Defendants to immediately stop using any confidential documents, as well as to account for the use of such information and to destroy any such documents on S&L's computers.  *See id.* Stantec further seeks discovery to purportedly streamline and support the preliminary injunction motions.  *See* Disc. Mot., ECF No. 3.

Defendants oppose preliminary injunctive relief, arguing that the temporal and geographic scope of the restrictive covenants at issue are not enforceable and, additionally, they lack consideration.  *See* PI Resp., ECF No. 20.  Defendants assert that while they each have a USB drive containing confidential Stantec information, the information was transferred in the normal course of business operations to permit remote working and, further, none of them have used that information for any nefarious purpose.  As to S&L, Defendants argue that S&L set up a screening system to confirm that any new job applicant was not solicited by Arslan, Williams, or Renshaw and, additionally, established rules regarding the projects and clients for whom Arslan, Williams, or Renshaw were permitted to work on behalf of S&L, so as not to run into conflict with the non-compete provisions contained in their respective employment agreements.

Defendants have also filed a partial motion to dismiss, seeking to dismiss Counts I, IV, and V.  *See* Mot. Dismiss, ECF No. 26.  They argue that the factual allegations do not support an unfair competition/raiding claim, that the restrictive covenants contained in Arslan's Employment Agreement lacks the requisite consideration and thus is unenforceable, and that civil conspiracy is not an independent cause of action and, regardless, the allegations are

insufficient to show a conspiracy.  Stantec opposes the motion, arguing that Defendants do not confine themselves to the allegations of the Complaint.  *See* Resp. Dismiss, ECF No. 29.

The Court makes the following findings of fact and conclusions of law.  *See* Fed. R. Civ. P. 52(a) (providing that in granting or denying a preliminary interlocutory injunction, "the court must find the facts specially and state its conclusions of law separately").

## III.   FINDINGS OF FACT[3]

Stantec is a professional consulting firm that provides, *inter alia*, engineering services. *See* Compl. ¶ 2.  Arslan, Williams, and Renshaw, each at-will employees, worked for Stantec in the Power and Dams Business Line department, which works throughout the thermal generation, transmission, and distribution, renewable energy, dams/hydropower, and telecommunications markets.  *See id.* and Exs. A, F, I.  Arslan's last day of employment with Stantec was on August 7, 2020.  *See* Hilary cert., Compl. at Ex. J.  Williams's last day was on October 1, 2020.  *See id.* Renshaw's last day was on October 30, 2020.  *See id.*  Shortly after leaving Stantec, each began working for S&L, a competing firm.  *See* Compl. ¶¶ 3-5, 39.  S&L specializes in professional services for electric power and energy intensive clients, offering nuclear power, power delivery, and consulting services.  *See id.* ¶ 6.

Stantec entered into an Employment Agreement with Arslan when he was appointed Vice President, which included a non-solicitation provision.  That provision states: "I agree that during my employment and for one year after my employment ceases, I will not directly or indirectly induce or attempt to induce any employee of Stantec to leave their employment with Stantec nor will I solicit work from or perform work for clients to which I have, or the business

---

[3]      The findings of fact are based on undisputed factual allegations in the Complaint, motions, and briefs.  The exhibits attached thereto, to the extent they do not depend on credibility assessments, also form the basis of the findings of fact.

unit for whom I was in responsible charge at Stantec has provided services during the last year of my employment with Stantec." *See* Agmt., Compl. at Ex. A.

Stantec extended offer of employment letters to Williams and to Renshaw, also containing non-solicitation, as well as non-competition, provisions. The letters state that a condition of employment is: "during and for one year after your employment, you won't induce or solicit any Stantec employee to leave their employment with Stantec and you won't compete with Stantec for any projects in which you've been involved." *See* Compl. at Exs. F, I.

Stantec had a written Confidentiality Policy providing that all confidential and proprietary information "must remain confidential and may not be disclosed or duplicated, except as permitted by this policy…." *See* Compl. at Ex. B. A forensic examination of the laptops issued by Stantec to Arslan, Williams, and Renshaw revealed that during their employment, which included remote work, each Defendant accessed confidential information. *See* Hilary cert. Additionally, in the months prior to termination, and as it related to Williams the day after his employment with Stantec terminated, Defendants inserted USB drives into the laptops. *Id.* at ¶¶ 11, 14-18. Stantec alleges based on "information and belief" Defendants are improperly using its confidential information. *See, e.g.* ¶ 34.

## IV.   LEGAL STANDARDS

### A.   Motion to Dismiss – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* As the Supreme Court has observed, "(explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of proving that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

  **B.**  **Hearing on Motion for Preliminary Injunction – Review of Applicable Law**

  "The applicable Federal Rule does not make a hearing a prerequisite for ruling on a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir. 1990) (citing Fed. R. Civ. P. 65(a)). "While an evidentiary hearing is not always required before resolving a preliminary injunction, . . . 'where the motion turns on a disputed factual issue, an evidentiary hearing is ordinarily required.'" *Arrowpoint Capital Corp. v. Arrowpoint Asset*

*Mgmt., LLC*, 793 F.3d 313, 324 (3d Cir. 2015) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369

F.3d 700, 719 n.16 (3d Cir. 2004)).  Circumstances where a hearing is not required include:

> [1] the movant is proceeding on a legal theory which cannot be sustained, because
> then there could be no showing of a likelihood of success on the merits . . .
> [2] the facts are undisputed and the relevant factual issues are resolved[4] . . .
> [3] the movant has not presented a colorable factual basis to support the claim on
> the merits or the contention of irreparable harm.

*Bradley*, 910 F.2d at 1175-76.  Additionally, a hearing may not be required if "the adverse party

has waived its right to a hearing."  *Prof'l Plan Exam'rs, Inc. v. Lefante*, 750 F.2d 282, 288 (3d

Cir. 1984).

### C.       Preliminary Injunction – Review of Applicable Law

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v.

Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted).  "A plaintiff seeking a

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to

suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20

(2008).  "A plaintiff's failure to establish any element in its favor renders a preliminary

injunction inappropriate."  *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

### D.       Expedited Discovery – Review of Applicable Law

The Federal Rules of Civil Procedure contemplate that discovery will begin after the

parties' Rule 26(f) meeting, and offer no guidance on when it is appropriate for courts to

authorize expedited and/or early discovery.  The Third Circuit Court of Appeals has not

---

4       Under these circumstances, a "decision may be based on affidavits and other
documentary evidence."  *Bradley*, 910 F.2d at 1176.

announced a standard, but district courts in the Third Circuit have applied two standards for evaluating such requests: (1) a more stringent injunctive relief standard, and (2) a "good cause" standard. *See Bath Auth., LLC v. Anzzi LLC*, No. 18-00834, 2018 U.S. Dist. LEXIS 179754, at *22 (E.D. Pa. Oct. 19, 2018). "The prevailing approach in this Circuit is to apply the 'good cause' or reasonableness standard to resolve motions for expedited discovery." *See id.* at *22-23. This standard "requires the party seeking discovery to show 'good cause' for its motion, such that the request is 'reasonable' in light of the relevant circumstances." *Kone Corp. v. Thyssenkrupp USA, Inc.*, No. 11-465-LPS-CJB, 2011 U.S. Dist. LEXIS 109518, at *10 (D. Del. Sep. 26, 2011). The court should consider: "(1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent." *See id.* at *11. "Where the requests are overly broad and extend beyond the needs of the preliminary injunction, leave should be denied." *Chubb INA Holdings, Inc. v. Chang*, No. 16-2354 (FLW)(DEA), 2016 U.S. Dist. LEXIS 82225, at *12 (D.N.J. June 24, 2016).

## V.    CONCLUSIONS OF LAW

### A.    Motion to Dismiss

#### i.    Count I- unfair competition/raiding

This claim is asserted against all Defendants.

"Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Synthes (USA) v. Globus Med., Inc.*, No. 04-CV-1235, 2005 U.S. Dist. LEXIS 19962, at *24-25 (E.D. Pa. Sep. 14, 2005).

"[T]he offering of employment to a person under a contract, terminable at the will of either, with another is not actionable in and of itself." *Albee Homes, Inc. v. Caddie Homes, Inc.*, 207 A.2d 768, 771 (Pa. 1965). Further, the "systematic inducing of employe[es] to leave their present employment and take work with another is [only] unlawful when the purpose of such enticement is to cripple and destroy an integral part of a competitive business organization rather than to obtain the services of particularly gifted or skilled employe[es]." *See id.*

Defendants argue that the voluntary resignation of three at-will employees, only one of whom was a Project Leader, could not possibly cripple such a large division of Stantec and that the Complaint does not include any factual allegations to make such a showing.[5] *See* Mot. Dismiss 14-20. Additionally, Defendants highlight that the resignations occurred at separate times over several months. *See id.* Defendants assert that Stantec has not alleged any facts to show that Arslan, Williams, and Renshaw solicited each other or existing clients of Stantec to move their projects to S&L, much less for the purpose of harming Stantec, or that S&L systematically poached Arslan, Williams, and Renshaw with the intent of crippling or destroying Stantec's Power and Dams business line. *See id.*

In opposition, Stantec argues that the allegations show that there was likely coordination between the Defendants in terms of the timing of their departures, unlawful solicitation of Stantec employees and/or customers, and the downloading of Stantec's confidential business information, which is sufficient to state a claim. *See* Resp. Dismiss 18. It asserts that S&L was aware, based on Stantec's cease-and-desist letter, of the restrictive covenant in Arslan's contract

---

[5]      Stantec correctly states that Defendants' arguments in the Motion to Dismiss go beyond the allegations in the Complaint, which is not consistent with the standard of review. This Court, however, considers only the arguments that are based on the factual allegations presented in the Complaint and the exhibits attached thereto.

but continued to pursue Williams, Renshaw, and another Stantec employee.  *See id.*  Stantec contends that the Complaint's allegations that the individual Defendants accessed proprietary information shortly before their departures is further evidence of, and can be the foundation for, unfair competition.  *See id.* at 19.

Assuming arguendo that the restrictive covenants in the contracts are valid and enforceable, Stantec has failed to state a claim.  Stantec has not shown that S&L, even after being made aware of the non-solicitation provision in Arslan's employment contract, tortiously interfered with the same, improperly induced any Stantec employees, or had the intent to "cripple and destroy" Stantec.  Rather, Arslan, Williams, and Renshaw were at-will employees free to leave Stantec at any time.  Moreover, Arslan's Employment Agreement did not contain a non-competition provision like the offer letters to Williams and Renshaw; rather, it contained only a non-solicitation provision.  This weakens any suggestion that S&L knew simply employing Williams and Renshaw might put them in violation of any contract with Stantec.

The Complaint makes only broad and conclusory allegations, unsupported by facts, that S&L induced Stantec employees to leave and/or that Arslan, Williams, and Renshaw induced or attempted to induce any Stantec employee to leave.  The emails between Arslan and Salesi Sika, which Stantec cite as evidence that Arslan was attempting to induce employees to leave, *see* Compl. ¶ 51 and Ex. E, do not support this inference.  Rather, the emails were initiated by Sika and asked Arslan to meet to discuss "how we as a group/department are doing," which seeks information similar to what might be discussed in an exit interview.  *See id.*  Although Sika comments that he has declined employment opportunities and is wondering if he should look into something, Arslan does nothing more than agree to meet with Sika.  *See id.*  The allegations also do not permit an inference from the brief email exchange, during the time of Arslan's

employment with Stantec, between Arslan and a Stantec client,[6] in which Arslan asks the client for "a couple minutes of [his] time," *see* Compl. ¶ 49 and Ex. D, that Arslan was soliciting the client for any improper purpose.  Finally, Stantec's allegation that Arslan "initiated rumors in the industry that Stantec is moving away from utility transmissions . . .," *id.* ¶ 73, is based only on "information and belief" and contains no details as to when, how, or to whom, these rumors were initiated.  The allegations of solicitation against Williams and Renshaw are even weaker.  As to any alleged violations of their non-competition provisions, Stantec does not allege that either Williams or Renshaw worked for S&L on "any projects in which [they'd] been involved," which is the scope of the restrictive covenants.  *See* Compl. at Exs. F, I.

To the extent the unfair competition claim is based on Defendants' alleged downloading, possession, and/or unlawful use of confidential information, Stantec has not shown that any Defendant actually used any confidential information or were "likely to misuse confidential information in order to compete unfairly."  *See Armstrong World Indus. v. Sommer Allibert, S.A.*, No. 97-3914, 1997 U.S. Dist. LEXIS 19069, at *50 (E.D. Pa. Nov. 26, 1997).  Stantec makes much ado about the fact that Arslan, Williams, and Renshaw, during the terms of their employment with Stantec downloaded confidential information.  Stantec refers to the forensic exam on the laptops showing that "since December 2019," USB drives have been inserted into the Williams' laptop and as early as February 2020, in the Renshaw laptop.  *See* Hilary Cert., Compl. Ex. J.  The exam found that as to these laptops and the Arslan laptop additional drives were inserted and reports and folders containing confidential information were accessed over the subsequent months.  *See id.*  The most frequent period of access appears to be in the spring and

---

[6]     Stantec explains in the preliminary injunction motion that this "client" was from Pacific Gas Electric ("PG&E").  PI Mot. 17.

summer of 2020.  *See id.*  It was at this time, however, that the impact of Coronavirus pandemic was greatest across the United States and many businesses were closed or were having their employees work remotely.  Additionally, during all such times that confidential information was accessed, Arslan, Williams, and Renshaw were working for Stantec and therefore had legitimate reasons to access the information.[7]  On only one occasion, October 2, 2020, was a USB drive connected to a Stantec laptop after that employee's employment had terminated.  However, aside from finding that a USB drive was inserted into the laptop on this date, the exam does not state that any confidential folders were accessed on this date.  *See id.*  It is therefore plausible that Williams inserted the USB drive to download personal documents left on the laptop.  Accordingly, this exam does not support Stantec's conclusory allegations that Defendants unlawfully accessed and/or used confidential information.

Stantec's claim of unfair competition/raiding, based largely on allegations of "upon information and belief,"[8] *see* Compl. ¶¶ 32-34, 42, 46-49, 51, 53, 61, 65-68, 70, 73, 76-77, 82, 85, fails to state a claim and is dismissed.  The dismissal of Count I is without prejudice.[9]

---

[7]     The Confidentiality Policy recognizes that "[i]n the course of employment, Stantec employees will inevitably receive, handle, or otherwise be exposed to the Company's confidential information" and prohibits only the copying of such information "for any purpose other than to undertake assignments with Stantec."  Conf. Policy, Compl. at Ex. B.

[8]     The Third Circuit Court of Appeals has held that a plaintiff may plead upon information and belief "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'"  *Weigang Wang v. Saker ShopRites, Inc.*, No. 16-CV-2443 (MAS) (TJB), 2017 U.S. Dist. LEXIS 11074, at *12-13 (E.D. Pa. Jan 26, 2017) (quoting *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016)).

[9]     *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

### ii.      Count IV- breach of contract

This claim is asserted against the individual Defendants.  Defendants move to dismiss

this count as to Arslan only.

"Under Pennsylvania law, a contract is formed when the parties (1) reach a mutual

understanding, (2) exchange consideration, and (3) delineate the terms of the bargain with

sufficient clarity." *Tuff Wrap Installations Inc. v. Cleanwrap, Inc.*, No. 11-2576, 2011 U.S. Dist.

LEXIS 70543, at *18 (E.D. Pa. June 29, 2011) (citing *Weavertown Transport Leasing, Inc. v.*

*Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003)).  A "'restrictive covenant entered into

subsequent to the commencement of the employee's service . . . must be supported by new

consideration, which can be in the form of a corresponding benefit or a beneficial change in

employment status.'" *Federated Sec. Corp. v. Connor*, No. 05-372, 2005 U.S. Dist. LEXIS

53242, at *20-21 (W.D. Pa. Oct. 17, 2005) (quoting *Insulation Corp. of America v. Brobston*,

667 A.2d 729, 733 (Pa. Super. 1995)).  To establish a breach of contract claim, the plaintiff

"must establish each of the following elements: (1) existence of a contract; (2) that the defendant

breached a duty, here, not to compete or disclose confidential information, imposed by that

contract; and (3) damages caused by the breach." *Revzip, LLC v. McDonnell*, No. 3:19-cv-191,

2019 U.S. Dist. LEXIS 211836, at *10-11 (W.D. Pa. Dec. 9, 2019) (citing *Meyer, Darragh,*

*Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247,

1258 (Pa. 2016)).

Defendants' Motion to Dismiss this count is based solely on the argument that the non-

solicitation provision is unenforceable as to Arslan because the June 1, 2019 Employment

Agreement was not supported by adequate consideration.  *See* Mot. Dismiss 20-22.  They assert

the Agreement reflected only a change in Arslan's title and was not a promotion as he received

no additional compensation, benefits, or privileges.  *See id.*  Defendants further suggest that the scope of the provision is overly broad.  In opposition, Stantec contends that the Agreement was supported by consideration because it entitled Arslan to twelve weeks of severance payments in the event that Stantec chose to terminate him and, also, because he was entitled to long term incentives, such as higher salary, performance bonus, stock options, and performance shares.  *See* Resp. Dismiss 20-22.  Defendants disagree with this interpretation, arguing that the Agreement merely provides Arslan with *either* twelve weeks of advance notice or pay in lieu of notice, and assert that Arslan's salary did not change.  *See* Mot. Dismiss 22.

This Court is not persuaded that the condition affording Arslan twelve weeks' notice of termination or of pay in lieu of notice in the event of Stantec's decision to terminate Arslan was sufficient consideration because Arslan, not Stantec, chose to terminate his employment, precluding him from any such compensation.  "Contingent compensation, where the contingency does not arise, is not valuable consideration."  *See McCarl's Servs. v. Dargenzio*, 249 A.3d 1183 (Pa. Super. Ct. 2021) (holding that the employee's change in job title and enrollment in the stock plan was not valuable consideration for the non-compete clause because where the non-compete clause was meant to survive the end of the employment relationship, so too must the stock plan).  Nevertheless, there is a sufficient basis to believe[10] that the Employment Agreement is supported by sufficient consideration due to the short-term and long-term incentives discussed in the Remuneration section and group benefits plan, which survives termination of employment.  *See* Agmt. § 2.  At this early stage of the proceedings, the Court also rejects Defendants' challenge to the scope of the non-solicitation provision.  *See Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d

---

[10]     This conclusion is based solely on the allegations of the Complaint and the documents attached thereto, including the Employment Agreement.

Cir. 2007) ("In this Information Age, a per se rule against broad geographic restrictions would seem hopelessly antiquated, and, indeed, Pennsylvania courts (and federal district courts applying Pennsylvania law) have found broad geographic restrictions reasonable so long as they are roughly consonant with the scope of the employee's duties.").

The Motion to Dismiss Count IV is denied.

### iii.    Count V- civil conspiracy

This claim, alleging that Defendants agreed and conspired to engage in unlawful competition, is asserted against all Defendants.  Compl. ¶ 124.

"In Pennsylvania, 'to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.'"  *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-988 (Pa. Super. Ct. 1997)).  Additionally, proof of malice (an intent to injure) is an essential part of a conspiracy claim.  *See Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. 2006).  The first element "'may be proved by acts and circumstances sufficient to warrant an inference that the unlawful combination had been in point of fact formed for the purpose charged. While conspiracy may be proved by circumstantial evidence, the evidence must be full, clear and satisfactory. . . . Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence.'"  *Scully v. US WATS, Inc.*, 238 F.3d 497, 516 (3d Cir. 2001) (quoting *Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 27 (Pa. 1947)).  "'[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.'"  *NSI Nursing Sols., Inc. v. Volume Recruitment Servs.,*

*LLC*, No. 17-1613, 2019 U.S. Dist. LEXIS 17170, at *22 (E.D. Pa. Feb. 4, 2019) (quoting *Pelagatti*, 536 A.2d at 1342).

Defendants move to dismiss Count V, arguing that civil conspiracy is not an independent cause of action and that because Stantec's claim of unfair competition, on which the conspiracy claim is based, is not viable, the conspiracy claim must be dismissed.  *See* Mot. Dismiss 23-26. Additionally, Defendants assert that even if the unfair competition claim were viable, the conspiracy claim also fails under the intra-enterprise conspiracy doctrine.  *See id.*  Pursuant to this doctrine, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves."  *Lackner*, 892 A.2d at 35.  Defendants further contend that Stantec fails to allege any facts to show there was an actual agreement or understanding between Arslan, Williams, and Renshaw to do an unlawful act, or that they acted with malice.

In opposition, Stantec asserts that there is sufficient circumstantial evidence at this stage of the proceedings that the individual Defendants worked together to breach the restrictive covenants, to solicit Stantec customers, and to take confidential information to aid in this purpose.  *See* Resp. Dismiss 22-24.  It further notes that there are other claims that are not subject to dismissal: Counts II, III, and VIII.  Stantec argues that the intra-enterprise conspiracy doctrine is not an obstacle because it alleges that the conspiracy involved actions by the individual Defendants before and after they joined S&L.  *See id.*

Despite Stantec's apparent reliance on Counts II, III, and VIII to base the conspiracy claim, Count V is specifically based on "unlawful competition" and is therefore dependent on Count I.  Moreover, even at this early stage of the proceedings, Stantec's broad and conclusory allegations are insufficient to state a claim.  Aside from the fact that Arslan, Williams, and Renshaw each left Stantec and joined S&L, there is nothing connecting their decisions to leave.

Stantec's suggestion that the timing is evidence of a conspiracy is not persuasive as the final days were almost three months apart. Stantec offers no allegations to show that they even discussed, let alone planned, to leave. There is also no evidence to suggest malice, especially when one factors in the Coronavirus pandemic and its impact on businesses. As previously noted, the fact that each of these employees accessed Stantec information during the course of their employment with Stantec does not suggest that they had any unlawful purpose in downloading the information. This claim is woefully deficient and is dismissed. Nevertheless, Count V is dismissed without prejudice.[11]

### B.      Hearing on Preliminary Injunction

An evidentiary hearing is not required in this case because Stantec has not shown a likelihood of success on the merits.[12] Further, the Court need not make any credibility determinations to rule on the request for injunctive relief.

### C.      Preliminary Injunction

The following conclusions of law are applicable to multiple counts:

There is no evidence that any Defendant solicited Stantec employees/customers or improperly obtained/used confidential information belonging to Stantec. The Complaint relies largely on allegations based "upon information and belief" and suggests unsupported factual leaps from a few vague emails and computer downloads during the course of the individual Defendants' employment with Stantec. The claims and request for injunctive relief are based

---

[11]      *See Alston*, 363 F.3d at 235.

[12]      Because a hearing is not being scheduled, the Court has not taken into account the affidavits offered by Defendants that deny the allegations, explain their reasons for certain conduct, and discuss the screening process enacted by S&L to prevent any violations, all of which, if found to be credible, would provide additional justification for denying preliminary injunctive relief.

largely on assumptions that Defendants did something wrong.  However, "injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to restrain one from doing what he is not attempting and does not intend to do."  *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (internal quotations omitted) (vacating the district court's preliminary injunction to enforce the nondisclosure covenant because the plaintiff's former employee's employment in the plant of a competitor was not sufficient to pose a risk that confidential information might be inadvertently disclosed).  For the reasons further discussed below, Stantec has not shown that all four elements have been met to permit the extraordinary remedy of injunctive relief.

### i.    Stantec has shown a likelihood of success on Counts III and IV as to Arslan.

#### a.    Counts I, IV, and V

As discussed above, Counts I and V fail to state a claim and are dismissed.

However, the request to dismiss Count IV for lack of consideration in Arslan's Employment Agreement was denied.  Although the allegations in the Complaint do not show a likelihood of success, when the Court also considers Stantec's assertion in its preliminary injunction motion that shortly after beginning with S&L Arslan met with Stantec's client Pennsylvania Power and Light ("PPL") and "encouraged" PPL to transfer business to S&L and that, as a result of Arslan's solicitation, "PPL *withdrew* projects worth approximately $1.1 million in net revenue from Stantec," *see* PI Mot. 17 (emphasis added), Stantec has shown, if able to substantiate such a claim, a likelihood of success on Count IV as to Arslan only.[13]

---

[13]    Notably, Arslan attests that he did not solicit PPL and that the person he met who worked for PPL was a long-time friend and they met in a social, not business, context.  However, to the extent this statement requires a credibility finding or is disputed, it is not relied upon here.

> **b.    Count II- tortious interference with business and/or contractual relationships**

This claim is asserted against Arslan and S&L.

"Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; [and] (4) legal damage to the plaintiff as a result of the defendant's conduct." *Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 212 (3d Cir. 2009). A competitor that intentionally causes another's employee "'not to continue an existing contract terminable at will does not interfere improperly with the other's relation if: (a) the relation concerns a matter involved in the competition between the actor and the other; (b) the actor does not employ wrongful means; (c) his action does not create or continue an unlawful restraint of trade; and (d) his purpose is at least in part to advance his interest in competing with the other.'" *Id.* at 215 (quoting section 768 of the Restatement (Second) of Torts). Knowledge of a restrictive covenant, alone, is not sufficient to create liability. *Progress Fed. Sav. Bank v. Lenders Ass'n*, No. 94-7425, 1995 U.S. Dist. LEXIS 11149, at *12-13 (E.D. Pa. July 31, 1995).

Although Stantec alleges that S&L was aware, based on Stantec's cease-and-desist letter, of the non-solicitation provision in Arslan's contract, there is nothing to show that S&L was also aware of the terms of the restrictive covenants applicable to Williams and Renshaw as they did not have independent employment agreements and, further, the non-solicitation provisions in their offer of employment letters are much narrower. Further, as previously discussed, Arslan's Employment Agreement did not contain a non-competition provision like the offer letters to

Williams and Renshaw, so as to possibly put S&L on notice that employing Williams and Renshaw might put them in violation of any contract with Stantec.  Moreover, the conclusory factual allegations of solicitation and broad leaps Stantec takes based on a few vague emails do not show a likelihood of success, nor does the fact that PG&E, one of the largest combined natural gas and electric energy companies in the United States, chose S&L, a competing firm, for some projects.  *See Brokerage Concepts v. United States Healthcare*, 140 F.3d 494, 530 (3d Cir. 1998) (holding that a "plaintiff must prove . . . for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the interference of the defendant" (citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1988)).  Stantec has also failed to connect S&L to Stantec's alleged solicitation of PPL, especially considering that S&L would reasonably want to work with PPL, one of the largest utility companies in the United States.

Consequently, Stantec has not shown a likelihood of success on its claim for tortious interference with business and contractual relationships.

### c.    Count III- breach of fiduciary duty/duty of loyalty

This count is against the individual Defendants.

"The elements the plaintiff must prove in claim of breach of fiduciary duty are: (1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bring about plaintiff's injuries."  *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998) (internal quotations omitted).  A claim for breach of the duty of loyalty requires a showing as to these same three elements, in addition to showing that a fiduciary or confidential relationship existed.  *See Hill v. Best Med. Int'l, Inc.*, No. 07-1709, 2011 U.S. Dist. LEXIS

123845, at *71-72 (W.D. Pa. Oct. 24, 2011).  "Pennsylvania law dictates that an employee, as the agent of his employer, owes his employer a duty of loyalty."  *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 667 (E.D. Pa. 2014).

"[U]nder the law of Pennsylvania[,] employees at will do not breach a fiduciary duty to the employer by making preparations to compete upon termination of employment provided the employee does not use the confidential information of his employer, solicit the customers of his employer, or otherwise engage in conduct directly damaging his employer during the period of employment."  *Oestreich v. Envtl. Inks & Coatings Corp.*, No. 89-8907, 1990 U.S. Dist. LEXIS 17243, at *17 (E.D. Pa. Dec. 17, 1990).  "Within this framework, an employee may properly inform customers of his current employer that he is leaving the employer to work elsewhere in the field, or to start his own competing business."  *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 414 (E.D. Pa. 2009) (internal quotation marks omitted).

As previously discussed, there is no evidence that Arslan, Williams, and Renshaw misappropriated any confidential information.  The allegations in this regard are based on negative inferences from the fact that the employees, during the course of their employment and for a period of up to ten months prior to leaving Stantec, downloaded confidential information that they might use in the performance of their duties and had contact with customers.  Stantec has not shown that the individual Defendants did not act for Stantec's benefit or that they had any intent to disclose any confidential information gained during their employment.  *See Oestreich*, 1990 U.S. Dist. LEXIS 17243, at *17 (finding that the party had not come forward with any facts showing that the employee used any confidential information of the employer, solicited the employer's customers, or engaged in conduct directly damaging to the employer "during his period of employment").  Stantec has also failed to show that Williams and Renshaw

solicited Stantec employees or customers, or that their mere employment with S&L violates any non-competition provision.

Nevertheless, based on Stantec's allegations in its preliminary injunction motion that shortly after beginning with S&L Arslan met with PPL and "encouraged" PPL to transfer business to S&L and that, as a result of Arslan's solicitation, "PPL *withdrew* projects worth approximately $1.1 million in net revenue from Stantec," *see* PI Mot. 17 (emphasis added), Stantec has shown, if able to substantiate such a claim, a likelihood of success on Count III as to Arslan only.

### d.   Count VI- misappropriation of trade secrets and/or confidential business information under the PUTSA

"The DTSA and PUTSA define misappropriation as 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means' or the 'disclosure or use of a trade secret of another without express or implied consent.'" *Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*, No. 1:17-CV-1587, 2019 U.S. Dist. LEXIS 32559, at *23 (M.D. Pa. Feb. 28, 2019) (quoting 18 U.S.C. § 1839(5)(A); 12 Pa. Cons. Stat. § 5302).  Under Pennsylvania law, the prima facie elements of the tort of misappropriation of a trade secret are: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Moore v. Kulicke & Soffa Indus.*, 318 F.3d 561, 566 (3d Cir. 2003).

For the reasons previously discussed, Stantec has failed to show a likelihood of success on its PUTSA claim, as there is no evidence that the confidential information was improperly acquired, communicated, used, or disclosed.[14]

### e.   Count VII- misappropriation of trade secrets/confidential information under the DTSA

For the reasons set forth in the prior subsection, Stantec has not shown a likelihood of success on the DTSA claim.

### f.   Count VIII- conversion

"[U]nder Pennsylvania law, conversion is the 'deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification.'" *Universal Premium Acceptance Corp. v. York Bank & Tr. Co.*, 69 F.3d 695, 704 (3d Cir. 1995) (quoting *Cenna v. United States*, 402 F.2d 168, 170 (3d Cir. 1968)). "A viable claim of conversion of confidential business information must allege that the defendant acquired the information through misconduct." *Hill*, 2011 U.S. Dist. LEXIS 123845, at *53.

For the reasons previously discussed, Stantec has not alleged sufficient facts to show that the downloads were improper or that S&L has improperly acquired any confidential information.

---

[14]    Defendants also argue that Stantec is unlikely to succeed on this claim because it arises out of the alleged breaches of duties imposed under their employment agreements and is barred under the gist of the action doctrine. *See* PI Resp. 24-25.  This argument is unavailing because while the "gist of the action doctrine bars breach of fiduciary duty claims if the duty alleged originates in the obligations of a contract, . . . many fiduciary obligations are imposed as a matter of social policy rather than by mutual consensus, and thus derive from principles of tort law rather than from the agreement of contracting parties." *Neopart Transit, LLC v. CBM N.A.*, 314 F. Supp. 3d 628, 637-38 (E.D. Pa. 2018) (internal quotations omitted).  "Pennsylvania law imposes a broad duty on an employee not to disclose confidential information obtained through a confidential employment relationship." *See id.* (refusing to apply the gist of the action doctrine to the breach of fiduciary duty claim).

ii.      **Stantec has not shown it will suffer immediate irreparable harm.**

"Establishing a risk of irreparable harm is not enough." *Ecri v. McGraw-Hill, Inc.*, 809

F.2d 223, 226 (3d Cir. 1987). "The requisite for injunctive relief has been characterized as a

clear showing of immediate irreparable injury, or a presently existing actual threat." *Cont'l Grp.,*

*Inc.*, 614 F.2d at 359 (internal quotations omitted). "Issuing a preliminary injunction based only

on a possibility of irreparable harm is inconsistent with [the Court's] characterization of

injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that

the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Accordingly, "an injunction[]

may not be used simply to eliminate a possibility of a remote future injury, or a future invasion

of rights, be those rights protected by statute or by the common law." *Cont'l Grp., Inc.*, 614 F.2d

at 359 (internal quotations omitted). Further, "there is no presumption of irreparable harm

afforded to parties seeking injunctive relief." *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765

F.3d 205, 216-17 (3d Cir. 2014) (holding that "the logic of *eBay*[15] is not limited to patent cases

but rather is widely applicable to various different types of cases" and agreeing with the Second

Circuit's decision in *Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir. 2010), which stated: "[W]e

see no reason that *eBay* would not apply with equal force to an injunction in any type of case.").

As explained throughout, Stantec has not shown that any confidential information was

improperly downloaded or has been or is likely to be used or disclosed. *See Cont'l Grp., Inc.*,

614 F.2d at 358-59 (vacating the district court's preliminary injunction to enforce the

nondisclosure covenant because the plaintiff's former employee's employment in the plant of a

---

[15]      *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006) (rejecting the invitation
"to replace traditional equitable considerations with a rule that an injunction automatically
follows a determination that a copyright has been infringed" because "traditional equitable
principles do not permit such broad classifications").

competitor was not sufficient to pose a risk that confidential information might be inadvertently disclosed, as there" must be an imminent threat of the allegedly harmful disclosure"). Stantec's arguments based on such allegations are unconvincing and it has not made a "clear" showing of irreparable harm as it relates to its confidential information. *See All. Life Scis. Consulting Grp., Inc. v. Fabriczi*, No. 17-864-CDJ, 2017 U.S. Dist. LEXIS 132440, at *26-27 (E.D. Pa. Aug. 17, 2017) (refusing to issue a preliminary injunction where the plaintiff's allegations that the defendants must be disclosing protected information was merely an assumption and a fear that the defendant might disclose protected information at some indeterminate time in the future).

The mere fact that Arslan, Williams, and Renshaw work for S&L is also insufficient to show there is a risk of imminent disclosure or irreparable harm. *See CertainTeed Ceilings Corp. v. Aiken*, No. 14-3925, 2014 U.S. Dist. LEXIS 152446, at *38 (E.D. Pa. Oct. 24, 2014) (finding that the fact a former employee took a job with a competing company, on its own, does not irreparably harm the former employer). Although Stantec has shown a likelihood of success in limited part on the breach of fiduciary duty claim, because Arslan, Williams, and Renshaw have left Stantec, "[t]here is no ongoing or threatened breach of a fiduciary duty" to warrant a preliminary injunction. *See Freedom Med. Inc. v. Whitman,* 343 F. Supp. 3d 509, 530-31 (E.D. Pa. 2018) (finding that where the individual defendants had already left the plaintiff's employment, the threatened breach of a fiduciary duty is gone and no preliminary injunction should issue on the breach of fiduciary duty claim).

The only other claim on which Stantec has shown a likelihood of success, breach of contract as to Arslan only, is based on its allegation that Arslan met with and solicited PPL to transfer business to S&L "worth approximately $1.1 million in net revenue." *See* PI Mot. 17. However, because this harm is quantifiable, it is not irreparable. *See Checker Cab of Phila. Inc.*

*v. Uber Techs., Inc.,* 643 F. App'x 229, 232 (3d Cir. 2016) (holding that the definition of irreparable harm is "a harm that can be shown but not quantified"); *see also Revzip, LLC*, 2019 U.S. Dist. LEXIS 211836, at \*22-23 (finding that the plaintiff failed to establish likely irreparable harm on its claims relating to violation of the non-compete agreement because, aside from one lost customer, the plaintiff could not establish that it was losing any other customers). Moreover, this alleged breach occurred approximately four months before Stantec sought injunctive relief and was not, nor is it now, "a presently existing actual threat." *See Cont'l Grp., Inc.*, 614 F.2d at 359.  Stantec's argument that because Arslan violated non-solicitation provisions before he will do it again, which notably seeks a negative inference from allegedly unlawful conduct that it previously benefitted from, is unconvincing as its allegations of future harm are entirely speculative. *See id.* (holding that "an injunction[] may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights . . . " (internal quotations omitted)); *Anderson v. Davila*, 125 F.3d 148, 163-64 (3d Cir. 1997) ("To show irreparable harm, the party seeking injunctive relief must at least demonstrate 'that there exists some cognizable danger of recurrent violation' of its legal rights." (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Stantec's reliance on cases that found irreparable harm and granted preliminary injunctions on unfair competition and tortious interference claims are unpersuasive because there is no likelihood of success on these claims.  *See Whitman*, 343 F. Supp. 3d 509 (concluding that because the plaintiff failed to carry its burden of showing its former employee, who misappropriated trade secrets while working for the plaintiff and went to work for a competing company, had any intention to imminently use a trade secret or to disclose it to a competitor, no

preliminary injunction would issue on the misappropriation of trade secret claim). Thus, Stantec has failed to show imminent irreparable harm if a preliminary injunction is not issued.

**a.    Granting preliminary injunctive relief will result in greater harm to Defendants.**

Because Stantec cannot meet the first two elements for injunctive relief as to S&L, Williams, and Renshaw, the harm to these Defendants if injunctive relief is granted is necessarily greater. *See Razor Tech., LLC v. Hendrickson*, No. 18-654, 2018 U.S. Dist. LEXIS 74918, at *30 (E.D. Pa. May 3, 2018) (concluding that because the plaintiff could not establish the first two elements of injunctive relief, it also could not show that "the balance of the equities favors prohibiting the further work of [the defendants] outweighs a possible but largely undefined claim"). The harm as to Arslan is also greater because an injunction would put greater restrictions on him than he contracted for in his Employment Agreement.

Moreover, as previously noted, Stantec has not provided any evidence (instead making unsupported factual leaps and conclusory statements) that it will suffer irreparable harm. In the absence of any such showing, the balance of equities favors Defendants. *See Revzip, LLC*, 2019 U.S. Dist. LEXIS 211836, at *24 (concluding that "[i]n the absence of any showing that any party subject to an agreement not to compete is in fact competing. . ., the balance of the equities here favors allowing competition because there is no evidence that restraining any of Defendants will limit any potential harm to [the plaintiff]"). Further, Stantec only showed a likelihood of success based on its alleged solicitation of PPL by Arslan, which does not support a preliminary injunction because PPL is such a large potential client and is not alleged to have put all its business with Stantec. S&L should be permitted to work with PPL so long as that work is not based on improper solicitations. *See Latuszewski v. VALIC Fin. Advisors, Inc.*, Nos. 04-1324, 04-1435, 04-2776, 2005 U.S. App. LEXIS 11006, at *4-5 (3d Cir. June 9, 2005).

Finally, as to Stantec's request for injunctive relief to protect its confidential information, there is little risk of harm if an injunction is not issued because there is no evidence that any Defendant has solicited, unlawfully obtained, or used/is using any confidential information. Moreover, Arslan, Williams and Renshaw have agreed to delete or return the information of Stantec that remains in their possession. *See* PI Resp. 29.

In total, the balance of equities overwhelmingly weighs in favor of Defendants.

### b.      The public interest does not favor injunctive relief.

Issuing a preliminary injunction where Stantec failed to satisfy any of the first three elements would necessarily be against the public interest. Moreover, Stantec has failed to show that granting a preliminary injunction is in the public interest.

There are several competing public interests at play in this case. The public at large benefits by allowing companies to compete freely. *See Vector Sec., Inc. v. Stewart*, 88 F. Supp. 2d 395, 401 (E.D. Pa. 2000). "[A]s a matter of public policy, Pennsylvania courts are reluctant to 'enforce any contracts in restraint of free trade, particularly where they restrain an individual from earning a living at his trade.'" *Coventry First, LLC v. Ingrassia*, No. 05-2802, 2005 U.S. Dist. LEXIS 13759, at *12 (E.D. Pa. July 11, 2005) (quoting *Insulation Corp. of Am. v. Brobston*, 667 A.2d 729, 733 (Pa. Super. 1995)). "[T]here is a public interest in employers being free to hire whom they please and in employees being free to work for whom they please." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010) (citing *Renee Beauty Salons, Inc. v. Blose-Venable*, 652 A.2d 1345, 1347 (Pa. Super. Ct. 1995)). "Nonetheless, it is generally in the public interest to uphold an agreement freely entered into by the parties." *Ingrassia*, 2005 U.S. Dist. LEXIS 13759, at *12. *See also Graphic Mgmt. Assocs. v. Hatt*, No. 97-CV-6961, 1998 U.S. Dist. LEXIS 3949, at *49 (E.D. Pa. Mar. 18, 1998) ("Restrictive

covenants only have value if they are enforced."). Though disfavored, "Pennsylvania courts recognize that 'covenants have developed into important business tools to 'allow employers to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) (quoting *Hess v. Gebhard & Co.*, 808 A.2d 912, 918 (Pa. 2002)). *See also Botticella*, 613 F.3d at 119 (holding that there is a public interest in protecting trade secrets and enforcing confidentiality agreements).

The Court recognizes the public interests in upholding enforceable contracts, preventing unfair competition, and protecting trade secrets. However, Stantec has not produced evidence of "unfair" competition and this claim is dismissed. In the absence of any evidence that Stantec's confidential information is being improperly used or disclosed, the public interest in preserving competition weighs in favor of denying the injunction. Moreover, in light of the fact that Arslan, Williams, and Renshaw would be forced out of work when the country is facing uncertain times with the Coronavirus pandemic and high unemployment rates, the public interest does not favor granting an injunction that would prevent these individuals from working for S&L.

### D.     Expedited Discovery

Stantec has failed to show good cause to order expedited discovery. Each of the three factors a court should consider in deciding such a request weigh against ordering expedited discovery. First, the motion for discovery was filed the same day the action was initiated. Stantec sought discovery before even serving its Complaint. Further, as discussed, no preliminary injunction hearing will be scheduled and the request for injunctive relief, considered simultaneously with the motion for expedited discovery, is denied. Second, contrary to Stantec's assertion that the scope of its discovery request is limited, Stantec seeks discovery into eight

separate issues.  Third, the burden on Defendants is extreme.  Stantec filed the motion seeking broad discovery before even serving the Complaint.

Moreover, an Answer to the Complaint has since been filed as to those claims that are not the subject of the Motion to Dismiss.  Although Stantec will be granted leave to file an amended complaint as to Counts I and IV, it is expected that this case will proceed quickly.  Moreover, in most all of the Undersigned's civil cases, the court expects counsel to begin discovery "as soon as possible" and not to wait until the Rule 16 conference.  The same is expected here.  ECF No. 7.

## VI.    CONCLUSION

The motion to dismiss Counts I and V is granted and these claims are dismissed without prejudice for failure to state a claim and with leave to file an amended complaint.  The motion is denied as to Count IV.

The motion for a preliminary injunction is denied because Stantec has failed to show a likelihood of success on the merits on any but two limited claims and has failed to show that it will suffer imminent irreparable harm if injunctive relief is not granted.  Its allegations are largely conclusory and based on unsupported assumptions.  Moreover, the balance of equities weigh against injunctive relief and the public interest does not favor an injunction.  A hearing on the motion for a preliminary injunction and for expedited discovery are unnecessary.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge